UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND *et al.*, | : : : : | |
| Plaintiffs, | : : | Civil Action No.: 09-1503 (RMU) |
| v. | : : | Re Document No.: 5 |
| ROSE CITY GLASS CO., INC., | : : | |
| Defendant. | : | |

# MEMORANDUM OPINION

### GRANTING THE PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

## I. INTRODUCTION

This matter comes before the court on the plaintiffs' motion for entry of default judgment. The plaintiffs, authorized collection fiduciaries and agents for a group of employee funds ("the Funds"), allege that the defendant failed to make contributions to the Funds as required by collective bargaining agreements ("CBAs") and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* The plaintiffs commenced this action on August 7, 2009, and served the defendant with the complaint on September 10, 2009. To date, the defendant has not responded to the complaint. Upon consideration of the plaintiffs' submissions, the court grants the plaintiffs' motion for default judgment and awards them $26,354.76 in damages.

## II. FACTUAL & PROCEDURAL BACKGROUND

On August 7, 2009, the plaintiffs commenced this action to recover delinquent

contributions to the Funds. Compl. ¶¶ 21-22, 26-27.[1]  They claim that the defendant entered into a series of CBAs with the plaintiffs,[2] which they violated by failing to file remittance reports and make monthly payments. *Id.* ¶¶ 18, 21-22, 26-27.  As alleged in the declaration of Thomas Montemore, Assistant to the Fund Administrator, an audit revealed a consistent pattern of underpayment from January 2004 through July 2008.  Pls.' Mot., Ex. 1 ("Montemore Decl.") ¶ 8. Additionally, the plaintiffs allege that the defendant failed to submit remittance reports or make monthly payments for the months of May, June, August and September 2009.  *Id.* ¶ 12.  The plaintiffs assert that the defendant's delinquency entitles them to interest, liquidated damages, audit costs and attorney's fees and costs.  Compl. ¶¶ 18, 23, 28.  Finally, the plaintiffs assert that the defendant's failure to comply with the CBAs also violates ERISA.  *Id.* ¶¶ 1, 21, 26.

The plaintiffs served the complaint on the defendant on September 10, 2009.  *See* Pls.' Aff. for Entry of Default, Ex. 1 (Decl. of Philip Lozano ("Lozano Decl. I")) ¶ 2.  Pursuant to Federal Rule of Civil Procedure 55(a), the plaintiffs requested that the Clerk of the Court enter default against the defendant for failure to plead or otherwise defend itself in this action.  *See* Pls.' Aff. for Entry of Default.  The Clerk of the Court entered default on October 2, 2009, *see* Entry of Default, and the plaintiffs filed this motion on November 12, 2009, s*ee generally* Pls.'

---

[1] The complaint renumbers the paragraphs listed in the prayer for relief. *See generally* Compl. This Memorandum Opinion will refer to the paragraphs in the complaint as if they were numbered sequentially with the rest of the document.

[2] As part of the CBAs, the defendant agreed to various plans and funds, including the International Painters and Allied Trades Industry Pension Plan ("Pension Plan"), the International Painters and Allied Trades Industry Annuity Plan ("Annuity Plan"), the Finishing Trades Institute ("FTI"), the Political Action Together Fund ("PAT Fund") and the Painters and Allied Trades Labor Management Cooperation Initiative ("LMCI"). *Id.* ¶¶ 4, 8-11.

Mot.[3]  To date, the defendant has not responded to the complaint or otherwise defended itself in this action.

### III.  ANALYSIS

#### A.  Legal Standard for Entry of Default Judgment Under Rule 55(b)(2)

A court has the power to enter default judgment when a defendant fails to defend its case appropriately or otherwise engages in dilatory tactics.  *Keegel v. Key W. & Caribbean Trading Co.*, 627 F.2d 372, 375 n.5 (D.C. Cir. 1980).  Rule 55(a) of the Federal Rules of Civil Procedure provides for entry of default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules."  FED. R. CIV. P. 55(a).  Upon request of the party entitled to default, Rule 55(b)(2) authorizes the court to enter against the defendant a default judgment for the amount claimed and costs.  *Id.* 55(b)(2).

Because courts strongly favor resolution of disputes on their merits, and because "it seems inherently unfair" to use the court's power to enter judgment as a penalty for filing delays, modern courts do not favor default judgments.  *Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980).  Accordingly, default judgment usually is available "only when the adversary process has

---

[3]  Rule 55 sets forth a two-step process for a party seeking default judgment: entry of default, followed by entry of default judgment.  FED. R. CIV. P. 55; *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986); *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981); *see also* 10A FED. PRAC. & PROC. CIV. 3d § 2682 (stating that "[p]rior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a)").  First, after a defendant has failed to plead or otherwise defend against an action, the plaintiff may request that the clerk of the court enter default against that defendant.  FED. R. CIV. P. 55(a).  Second, following the clerk's entry of default, and where the plaintiff's claim is not for a sum certain, the plaintiff may apply to the court for entry of default judgment.  *Id.* 55(b)(2).  By providing for a two-step process, Rule 55 allows the defendant the opportunity to move the court to set aside the default before the court enters default judgment.  *Id.* 55(b), (c); *see also Meehan*, 652 F.2d at 276 (noting that "pursuant to Rule 55(c), the defendant has an opportunity to seek to have the default set aside").

been halted because of an essentially unresponsive party . . . [as] the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights." *Id.* at 836 (quoting *H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)).

Default establishes the defaulting party's liability for the well-pleaded allegations of the complaint. *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001); *Avianca, Inc. v. Corriea*, 1992 WL 102999, at *1 (D.D.C. Apr. 13, 1992); *see also Brock v. Unique Racquetball & Health Clubs, Inc.*, 786 F.2d 61, 65 (2d Cir. 1986) (noting that "default concludes the liability phase of the trial"). Default does not, however, establish liability for the amount of damage that the plaintiff claims. *Shepherd v. Am. Broad. Cos.*, 862 F. Supp. 486, 491 (D.D.C. 1994), *vacated on other grounds*, 62 F.3d 1469 (D.C. Cir. 1995). Instead, "unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Adkins*, 180 F. Supp. 2d at 17; *see also Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (stating that the court must conduct an inquiry to ascertain the amount of damages with reasonable certainty). The court has considerable latitude in determining the amount of damages. *Jones v. Winnepesaukee Realty*, 990 F.2d 1, 4 (1st Cir. 1993). To fix the amount, the court may conduct a hearing. FED. R. CIV. P. 55(b)(2). The court is not required to do so, however, "as long as it ensure[s] that there [is] a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997).

### B. The Court Grants the Plaintiffs' Motion for Default Judgment

### 1. The Defendant Is Liable to the Plaintiffs

The plaintiffs allege that they are entitled to default judgment because of the defendant's failure to appear or otherwise defend itself against the plaintiffs' claims. Pls.' Mot. at 1. Further, the plaintiffs assert that as a result of the defendant's default, the court should treat all of the plaintiffs' factual allegations as admitted. *Id.* at 1-2.

As previously discussed, the defendant was served with the complaint on September 10, 2009. Lozano Decl. I ¶ 2. After the defendant failed to respond to the complaint, it was served with the affidavit for default on October 1, 2009. *See* Pls.' Aff. for Entry of Default. Finally, the defendant was served with this motion on November 12, 2009. *See* Pls.' Mot. Given that the defendant has failed to plead or otherwise defend itself, the entry of default judgment is appropriate. *See, e.g.*, *Jackson*, 636 F.2d at 836 (holding that default judgment is appropriate when "the adversary process has been halted because of an essentially unresponsive party" (quoting *H. F. Livermore Corp.*, 432 F.2d at 691)).

As a consequence of the defendant's default, the defendant is deemed to have admitted all of the well-pleaded allegations in the complaint. *See Avianca, Inc.*, 1992 WL 102999, at *1. ERISA requires that "[e]very employer who is obligated to make contributions to a multiemployer plan . . . under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. The plaintiffs allege that the CBAs and ERISA require the defendant to make monthly contributions to the Funds, which the defendant has failed to do to the detriment of the Funds. Compl. ¶¶ 1, 16-17, 21-22, 26; Pls.' Mot. at 2. Finally, the plaintiffs allege that the

defendant agreed to pay the cost of an audit if found to be delinquent or in violation of the CBAs. Compl. ¶ 18; *see also id.* Ex. 2 ("Trust Agreement"), Art. VI, § 6; Compl., Ex. 3 ("Pension Plan"), §§ 10.07, 10.12. The court accepts these well-pleaded allegations as admitted, *see Avianca, Inc.*, 1992 WL 102999, at *1, and must now determine the appropriate relief.

### 2. The Plaintiffs Are Entitled to $26,354.76 in Damages

The plaintiffs contend that the defendant owes them a total of $26,354.76 in damages as a result of its failure to make the necessary contributions to the Funds. Pls.' Mot. at 1-2. The plaintiffs itemize their damages as follows: (1) $14,032.20 in unpaid contributions, calculated as $4,523.38 in unpaid contributions discovered after an audit of records for the period from January 2004 to July 2008 and $9,508.82 in unpaid contributions for May, June, August and September 2009;[4] (2) $921.61 in interest on the unpaid contributions, calculated in accordance with the fluctuating IRS interest rate; (3) $2,806.44 in liquidated damages, calculated as twenty percent of the unpaid contributions; (4) $3,340.00 in audit costs; and (5) $5,254.51 in attorney's fees and costs. Montemore Decl. ¶¶ 8-12; Pls.' Mot., Ex. 5 ("Lozano Decl. II") ¶ 2.

ERISA states that when a fiduciary of an employee benefit plan is awarded judgment, the court must also award the plan all of the following:

    (A) the unpaid contributions,
    (B) interest on the unpaid contributions,
    (C) an amount equal to the greater of –
        (i) interest on the unpaid contributions, or

---

[4] According to the plaintiffs, the defendant failed to make monthly contributions or file remittance reports for the months of May, June, August and September 2009. Pls.' Mot., Ex. 1 ("Montemore Decl.") ¶ 8. As a result, the plaintiffs estimate the unpaid monthly contributions for each of those months as the average of the three monthly remittance reports that were filed immediately before the period for which no reports were filed. *Id.*

> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court in subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.
>
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

29 U.S.C. § 1132(g)(2).

Addressing each of these provisions in order, ERISA first entitles the plaintiffs to the defendant's unpaid contributions. *Id.* § 1132(g)(2)(A). The plaintiffs' entitlement to unpaid contributions stems from two different sources. Montemore Decl. ¶ 8. First, the plaintiffs are entitled to $4,523.38 in delinquent contributions discovered during the plaintiffs' audit of the period from January 2004 to July 2008. *See Fanning v. Big Warrior Corp.*, 2010 WL 1573807, at *4 (D.D.C. Apr. 21, 2010) (granting the plaintiff unpaid contributions discovered during an audit). Second, because the defendant failed to make monthly payments or provide remittance reports for May, June, August and September 2009, the court accepts as reasonably certain the plaintiffs' estimate of $9,508.82 for the defendant's delinquent contributions during this period. *Cf. Flynn v. Extreme Granite, Inc.*, 671 F. Supp. 2d 157, 162 (D.D.C. 2009) (granting the defendant's unpaid contributions to an ERISA plaintiff based on the plaintiff's estimate as derived from the average of the reports of the three immediately preceding months); *Greater St. Louis Constr. Laborers Welfare Fund v. D & H Concrete, Inc.*, 2008 WL 2437419, at *2 (E.D. Mo. June 12, 2008) (allowing an ERISA plaintiff to estimate the amount of delinquent contributions owed, as the defendants had failed to submit the information necessary for a more

precise calculation). Therefore, this court awards the plaintiffs $4,523.38 in delinquent contributions for the period from January 2004 to July 2008 and $9,508.82 for unpaid monthly contributions for May, June, August and September 2009, yielding a total sum of $14,032.20 for the defendant's unpaid contributions.

ERISA also entitles the plaintiffs to interest on the defendant's unpaid contributions either at the rate established in the plan or at the fluctuating IRS interest rate. 29 U.S.C. § 1132(g)(2). In this case, the CBAs set the interest rate at the fluctuating IRS interest rate. *See* Pls.' Mot. at 4. Therefore, the court grants the plaintiffs' request for interest in the amount of $921.61[5] based on the defendant's unpaid contributions through October 22, 2009. *See Int'l Painters & Allied Trades Indus. Pension Fund v. Advanced Pro Painting Servs.*, 2010 WL 1069161, at *4 (D.D.C. Mar. 24, 2010) (granting interest calculated with the fluctuating IRS rate).

In addition to the foregoing, the plaintiffs are entitled to an amount equal to either the greater of interest on the unpaid contributions ($921.61) or the liquidated damages provided for in the plan. *See* 29 U.S.C. § 1132(g)(2)(C). In this case, the defendant agreed to pay the plaintiffs liquidated damages equal to the greater of the interest on the unpaid contributions ($921.61) or twenty percent of any unpaid contributions ($2,806.44) in the event the defendant became delinquent in its contributions. *See* Pension Plan § 10.12. Because twenty percent of the defendant's unpaid contributions is greater than the interest on the unpaid contributions, the

---

[5] Additional interest may have accrued since the filing of the plaintiffs' motion. Because the court lacks the information necessary to calculate the additional interest, the court grants the plaintiffs leave to request additional interest for that period.

court grants the plaintiffs $2,806.44 in liquidated damages. *See Int'l Painters & Allied Trades Indus. Pension Fund v. Brighton Painting Co.*, 2010 WL 1539746, at *4 (D.D.C. Apr. 19, 2010) (granting liquidated damages at the rate prescribed in the plan because that amount was greater than the interest on the defendant's unpaid contributions).

Next, the plaintiffs claim that they are owed $3,340.00 in audit costs. Pls.' Mot. at 5; Montemore Decl. ¶ 12. ERISA permits fiduciaries of a plan to bring suit to enforce the terms of that plan. 29 U.S.C. § 1145; *see also Bituminous Coal Operators' Ass'n v. Connors*, 867 F.2d 625, 633 (D.C. Cir. 1989) (holding that ERISA "entitles pension funds to rely upon, and to enforce, the written terms of collective bargaining agreements"). As the plaintiffs correctly point out, the CBAs entitle them to the costs of an audit when that audit reveals a delinquency. *See* Trust Agreement, Art. VI, § 6; Pension Plan, §§ 10.07, 10.12. As previously discussed, the plaintiffs performed an audit that revealed "a consistent pattern of underpayments and non-payments" for the period from January 2004 to July 2008. Montemore Decl. ¶ 12. As a result, the court determines that the audit costs are reasonable and awards the plaintiffs $3,340.00 in audit costs. *See Fanning v. Permanent Solutions Indus., Inc.*, 257 F.R.D. 4, 8 (D.D.C. 2009) (awarding audit costs to the plaintiff pursuant to the parties' agreement).

Finally, the court must determine whether the plaintiffs' request for attorney's fees and costs is reasonable. *See* 29 U.S.C. § 1132(g)(2)(D). The plaintiffs' request is amply supported with documentation itemizing the time and money expended in this proceeding and comparing the attorney's rates with that of similarly situated attorneys and legal professionals. *See generally* Lozano Decl. II. Upon a review of the declaration and supporting materials, the court

concludes that the plaintiffs' request is reasonable and awards them $5,254.51 in attorney's fees and costs. *See Flynn v. McCormick Tile LLC*, 245 F.R.D. 16, 18 (D.D.C. 2007) (granting attorney's fees after a review of supporting materials submitted by the plaintiff); *accord Int'l Painters & Allied Trades Indus. Pension Fund v. Zak Architectural Metal & Glass LLC*, 635 F. Supp. 2d 21, 26 (D.D.C. 2009); *Permanent Solutions Indus.*, 257 F.R.D. at 8.

## IV. CONCLUSION

For the foregoing reasons, the court grants the plaintiffs' motion for default judgment and orders the defendant to pay the plaintiffs $26,354.76 in damages for unpaid contributions, interest, liquidated damages, audit costs and attorney's fees and costs. The court also grants the plaintiffs leave to request additional interest for the time that has elapsed since the filing of the plaintiffs' motion. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 9th day of August, 2010.

RICARDO M. URBINA
United States District Judge